UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------- X

PAVEL POGODIN AND ALEXANDER
PROKHOROV,                                                    18 Civ. 791

                Plaintiffs,
                                                                       **COMPLAINT**
        - against -

CRYPTORION INC., ZURAB TSITSUASHVILI
A/K/A ZURAB ASHVIL, AND ZVI BEN-ZVI,

                Defendants.

------------------------------------- X

       Plaintiffs PAVEL POGODING and ALEXANDER PROKHOROV, through their attorneys, Val Mandel, P.C., as and for their complaint in this action, allege as follows:

## THE PARTIES

       1.     Plaintiff Pavel Pogodin ("Pavel") is an individual residing at 17 Baldwin Road, Saddle River, New Jersey.

       2.     Plaintiff Alexander Prokhorov ("Alexander" and, together with Pavel, "Plaintiffs") is an individual residing at 16840 Crown Bridge Drive, Delray Beach, Florida.

       3.     Defendant Cryptorion Inc. ("Cryptorion"), is a Delaware Corporation, with its registered office at c/o Harvard Business Services, Inc., 16192 Costal Highway, Lewes, Delaware.

       4.     Upon information and belief, Defendant Zurab Tsitsuashvili a/k/a Zurab Ashvil ("Defendant Zurab") is an individual residing at 104-40 Queens Boulevard, Apt. 8J, Forest Hills, New York.

5. Upon information and belief, Defendant Zvi Ben-Zvi ("Defendant Zvi" and, together with Defendant Zurab, "Individual Defendants") is an individual residing at 38 Old Farm Road, Great Neck, New York.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because the Individual Defendants reside in this district.

## FACTS RELEVANT TO ALL COUNTS

8. Givi Topchishvili introduced Plaintiffs to Defendant Zvi on or about August 22, 2017. Mr. Topchishvili recommended Defendant Zvi to Plaintiffs as a successful broker dealer with many years of experience and an in-depth understanding of investments and transactional business.

9. On or About August 23, 2017, Defendant Zvi, in turn, introduced Plaintiffs to Defendant Zurab, who is a Harvard graduate with many years' experience in the financial sector. At that time, the Individual Defendants represented that they were the co-founders and co-owners of Cryptorion.

10. The Individual Defendants solicited Plaintiffs' funds for use by Cryptorion, which would be provided to Cryptorion in the form of a convertible loan.

11. The Individual Defendants represented themselves as experts in cryptocurrency and financial services.

12. The Individual Defendants represented that Cryptorion would purchase iBeLink DM 22G servers from a company located in the People's Republic of China (the "Servers"), which the Individual Defendants described as the best servers for mining cryptocurrency, place the Servers in a datacenter, and mine a cryptocurrency known as "Dash."

13. The Individual Defendants represented that they had a special relationship with iBeLink, which would allow them to obtain the Servers at significantly better price than that offered to others.

14. Upon information and belief, the Individual Defendants did not have a special relationship with iBeLink, which would allow them to obtain the Servers at a significantly better price than offered to others, and that other perspective customers, known to Plaintiffs, were able to obtain the same computer equipment at the same price.

15. The Individual Defendants also represented to Plaintiffs that: (a) they were in possession of propriety cryptocurrency mining software that made mining more efficient, which would give Cryptorion a competitive edge over other companies in the same business; and (b) Cryptorion would lease and/or sell the Servers to customers and would host and manage such mining. See www.cryptorion.co.

16. Upon information and belief, the Individual Defendants either misrepresented their expertise or purposefully withheld information about the special risks associated with this particular industry, or both. For example, the Individual Defendants, who held themselves out to be experts in the business of mining cryptocurrency, did not disclose to Plaintiffs that the difficulties of efficiently mining cyrptocurrencies would drastically increase, and that, as time goes on and the market for such cryptocurrency grows, each Server can mine less and less of that cryptocurrency.

17. The Term Sheet for Proffered Investors, which was presented to Plaintiffs by the Individual Defendants, valued Cryptorion at $5,000,000.00.

18. According to documents provided to Plaintiffs by the Individual Defendants, Defendant Zurab would be the CEO/CTO of Cryptorion, while Defendant Zvi would be its CFO.

19. Defendant Zvi's involvement in Cryptorion, his purported 50% ownership in Cryptorion, the Individual Defendants' written and verbal representations about Cryptorion's business assets and advantage, their special relationship with iBeLink, and the business proposal, all induced Plaintiffs to proceed with the convertible loan.

20. On August 24, 2017, Alexander transferred $250,000.00 to Cryptorion, evidenced by a Secured Promissory Noted, dated August 24, 2017 (the "August 24 Note"). A copy of the August 24 Note is annexed hereto as Exhibit A.

21. On September 1, 2017, Alexander transferred $386,558.00 to Cryptorion, evidenced by a Secured Promissory Note, dated September 1, 2017 (the "September 1 Note" and, together with the August 24 Note, the "Notes"). A copy of the September 1 Note is annexed hereto as Exhibit B.

22. Each of the Notes stated, that, on or before September 10, 2017, Cryptorion "shall" issue such number of shares of preferred stock in Cryptorion to Plaintiffs so as to entitle them to a thirty (30%) interest in the total voting power and economic interest in Cryptorion. Exhibits A and B, ¶ 1.02.

23. Paragraph 2 of each Note stated that the Note would be deemed in default, without need for further notice, unless Cryptorion issued the preferred stock to Plaintiffs on or before the end of business on September 15, 2017. Exhibits A and B, ¶ 2.

24. On September 14, 2017, Pavel transferred an additional $50,000.00 to Cryptorion.

25. On the same day, Cryptorion and Plaintiffs, together with Givi Topchishvili, who became a consultant to Cryptorion, entered into a Memorandum of Understanding ("MoU"). A copy of the MoU is annexed hereto as Exhibit C.

26. The MoU incorporated the Notes by reference. Exhibit C, ¶ 1.

27. The MoU states that within ten (10) business days, Cryptorion had to cause its counsel to prepare an amendment to the Certificate of Incorporation for the purposes of authorizing and issuing cumulative preferred stock (the "Amendment"). Exhibit C, ¶ 2.

28. The Amendment was filed on September 20, 2017.

29. The MoU further states that:

Promptly, but under no circumstances less than ten (10) business days following the filing of the Amendment and contemporaneously with the payment of the outstanding balance of the Investment (unless reasonably required by counsels to Cryptorion and Investors in the course of good faith negotiations): (b) Cryptorion shall issue 1,500,000 shares of preferred stock to the investors in equal proportions pursuant to a stock purchase agreement reflecting usual and customary terms.

Exhibit C, ¶ 3.

30. Alexander transferred an additional $313,442.00 to Cryptorion.

31. Once Cryptorion had Plaintiffs' money, the status of the company, and Defendants' attitude towards Plaintiffs, changed.

32. The preferred stock was not issued within ten days of the Amendment or at any time thereafter. The parties never signed a stock purchase agreement. None was even proposed during the ten day period following the filing of the Amendment.

33. By the middle of September 2017, Defendant Zvi suddenly stopped being involved in Cryptorion. Until that date, Defendant Zvi was regularly involved in discussions with Plaintiffs, and the company was represented by the law firm of Wyrick Robbins. Defendant

Zurab responded to a certain draft of the MoU with the words "This is all wrong! Adding Aaron Messing." After which, Cryptorion's representation was taken over by Aaron I. Messing, Esq. of A.Y. Strauss LLC.

34. Defendant Zvi's involvement was a material reason why Plaintiffs decided to proceed with the convertible loan. Plaintiffs relied, to their detriment, on the representation that he was a co-founder and equal shareholder with Defendant Zurab, and would continue as Cryptorion's CFO.

35. Upon information and belief, the representations that Defendant Zvi was and would continue to be Defendant Zurab's equal in the control and management of Cryptorion was a ruse calculated to secure the convertible loan.

36. Upon information and belief, Defendant Zurab has misappropriated Cryptorion's funds (the main source of which was the convertible loan extended by Plaintiffs) for his own personal use. For example, a Cryptorion bank statement shows suspicious expenditures including such payments as a karaoke bar and hotel in Minsk, Belarus; a payment of $3,000.00 to Defendant Zurab; and a cash withdrawal of $1,000.00.

37. On or about December 13, 2018, during a meeting with Defendant Zurab and Aaron Messing, Esq., Plaintiffs asked Defendant Zurab to let them know how Cryptorion was doing and share with them key financial documents.

38. Defendant Zurab stonewalled Plaintiffs with excuses for withholding information, including the assertion that Plaintiffs were not entitled to such information because they were not yet shareholders of Cryptorion.

39. Mr. Messing was the attorney who negotiated the MoU and upon whom the MoU placed various express obligations, such as drafting and filing the Amendment.

40. On January 16, 2018, Mr. Messing wrote to Mark Rabinovich, Esq., attorney for Plaintiffs, indicating that Plaintiffs were owners of preferred shares of the Company, contradicting what he and Defendant Zurab said at a meeting on or about December 13, 2018.

41. On January 16, 2018, Plaintiffs served a Notice of Default and Acceleration and Demand for Payment upon Cryptorion ("Notice of Default"). A copy of the Notice of Default is annexed hereto as <u>Exhibit D</u>.

42. On January 17, 2018, Cryptorion responded with a lengthy letter, in which, *inter alia*, Cryptorion states that "To be clear, at all relevant times, all parties understood that, <u>although no certificated shares were issued to any preferred or common shareholder</u>, the capitalization table was as set forth in the MoU, and you were entitled to exercise you warrant rights pursuant to the terms thereof." (Emphasis added.) A copy of the January 17, 2018 response is annexed hereto as <u>Exhibit E</u>.

43. Upon information and belief, Defendant Zurab has mislead Plaintiffs from the beginning, usurped all corporate powers, has refused to share relevant information with Plaintiffs, and misappropriated Cryptorion's assets for his own benefit.

44. Cryptorion defaulted on the Notes and breached the MoU.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

45. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 44.

46. Cryptorion defaulted on the Notes and the MoU by failing, among other things, to issue the preferred stock to Plaintiffs within the time and on the terms provided for in the Notes and the MoU.

47. Pursuant to the terms of the Notes and the MoU, Plaintiffs are entitled to have the funds they extended to Cryptorion repaid, together with interest at ten (10%) per annum, and legal fees and costs incurred by them in enforcing and collecting on the Notes.

## AS AND FOR A SECOND CAUSE OF ACTION
(Fraud)

48. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 47.

49. Defendants intentionally misrepresented to Plaintiffs the facts about Cryptorion's ownership, management, assets and operations, and failed to disclose the special risks associated with mining cryptocurrency, in order to induce Plaintiffs to advance the convertible loan of $1,000,000.00.

50. Plaintiffs reasonably relied on Defendants' intentional misrepresentation to their detriment, and, as a result, have suffered, and are continuing to suffer, substantial damages.

## AS AND FOR A SECOND CAUSE OF ACTION
(Rescission)

51. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 50.

52. Defendants intentionally misrepresented to Plaintiffs the facts about Cryptorion's ownership, management, assets and operations, and failed to disclose the special risks associated with mining cryptocurrency, in order to induce Plaintiffs to advance the convertible loan of $1,000,000.00.

53. The course of events after Plaintiffs provided Defendants with the convertible

loan defeated the very purpose of the Notes and MoU.

54. Plaintiffs reasonably relied on Defendants' intentional misrepresentation in entering into agreements with Cryptorion and, as a result, the Notes and the MoU should be rescinded and the convertible loan funds returned to Plaintiffs.

WHEREFORE, Plaintiffs demands judgment against Defendants, as follows:

a) On the first cause of action against Cryptorion for liquidated damages in the amount of $1,043,273.53, attorney's fees and costs, to be determined by the court, and for such other and further relief as the Court may deem just and proper; and

b) On the second cause of action against the Individual Defendants, jointly and severally, for compensatory damages in the amount of $1,000,000.00, interest, attorneys fees and costs, to be determined by the court, punitive damages, and for such other and further relief as the Court may deem just, and proper;

c) On the third cause of action for return of the convertible loan to Plaintiffs, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
February 5, 2018

                          VAL MANDEL, P.C.
                          80 Wall Street, Suite 1115
                          New York, New York 10005
                          (212) 668-1700
                          *Attorneys for Plaintiffs*

                          By: *s/ Daniel Akselrod*
                                Daniel Akselrod