UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
PAVEL POGODIN and ALEXANDER
PROKHOROV,

                        Plaintiffs,

       -against-

CRYPTORION INC., ZURAB TSITSUASHVILI
a/k/a ZURAB ASHVIL, and ZVI BEN-ZVI,

                       Defendants.
------------------------------------------------------------ x

MEMORANDUM & ORDER

18-CV-791 (ENV)(SMG)

VITALIANO, D.J.

      Pavel Pogodin and Alexander Prokhorov filed this action against Cryptorion Inc. ("Cryptorion" or "the company"), Zurab Tsitsuashvili a/k/a Zurab Ashvil ("Zurab"), and Zvi Ben-Zvi ("Ben-Zvi"), alleging breach of contract as to Cryptorion and fraudulent inducement as to all defendants. Dkt. 1 ("Compl."). Zurab moves to dismiss the fraudulent inducement claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] See Dkt. 26-1 ("Zurab Mem."). For the reasons set forth below, the motion is granted in part and denied in part.

---

[1] Cryptorion joined in the motion to dismiss at the time of filing, but its counsel subsequently withdrew and Cryptorion failed to retain new counsel by the deadline set by Magistrate Judge Steven M. Gold. See Dec. 11, 2018 Order. Default was entered against Cryptorion, on December 27, 2018, and plaintiffs filed a motion for default judgment, which was referred to Judge Gold for report and recommendation. See Dkts. 43, 47; Jan. 18, 2019 Orders. Significantly, although Cryptorion and Zurab jointly moved to dismiss the breach of contract claim, plaintiffs confirm that Cryptorion is the sole defendant on that claim. See Dkt. 26-24 ("Pls.' Opp'n") at 11; Compl. ¶ 46. Therefore, since Zurab is not a defendant on the breach of contract claim, and Cryptorion is in default of the order to retain new counsel, the Court declines to consider that branch of the motion further. It is denied without prejudice with leave to renew, subject to plaintiffs' motion for default judgment.

1

## Background[2]

This action arises out of a troubled business relationship centered on the "mining" of cryptocurrency.[3] Through a mutual contact, plaintiffs met Ben-Zvi, who, in turn, introduced them to Zurab, on or about August 23, 2017. Compl. ¶¶ 8-9. Ben-Zvi and Zurab represented that they were co-founders and co-owners of a company called Cryptorion. *Id.* ¶ 9. Cryptorion, Ben-Zvi and Zurab advised, planned to purchase "the best servers for mining cryptocurrency" from iBeLink, a Chinese company with which they had "a special relationship," and establish a datacenter for mining a cryptocurrency called "Dash." *Id.* ¶¶ 12-13. Ben-Zvi and Zurab invited plaintiffs to invest in Cryptorion through a convertible loan, representing that Ben-Zvi would serve as the company's CFO, with Zurab as CEO/CTO. *Id.* ¶¶ 10, 18.

Plaintiffs claim to have transferred, by installment payment, a total of $1 million to Cryptorion over the course of August and September 2017. In connection with the payments, two promissory notes and a memorandum of understanding were executed. Plaintiffs and the company were the relevant signatories. *See* Compl. ¶¶ 20-21, 24, 30; *id.* Exs. A, B (collectively, the "notes"); *id.* Ex. C ("MOU"). These agreements required Cryptorion to amend its Certificate of Incorporation, issue cumulative preferred stock to plaintiffs, and prepare a stock purchase

---

[2] The background facts are taken from the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). All facts alleged in plaintiffs' pleadings are taken as true and all reasonable inferences are drawn in their favor. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

[3] Cryptocurrencies are digital currencies, such as Bitcoin, that rely on encryption techniques to secure and verify financial transactions, independent of a central issuing or regulating authority. Cryptocurrency "mining" is the use of specialized computer hardware to verify the transactions in a particular cryptocurrency and add them to its cryptographically secured digital ledger, or "blockchain," in exchange for payment in the form of newly-minted units of the cryptocurrency.

agreement in accordance with certain terms and deadlines. Notes ¶¶ 1.01, 1.02; MOU ¶¶ 1, 2, 3(b), 3(c). Despite acceptance of plaintiffs' payment of $1 million as contemplated by the notes and MOU, Cryptorion did not issue preferred stock to plaintiffs and a stock purchase agreement was never executed. Compl. ¶ 32.

Plaintiffs allege that defendants intentionally made false statements regarding Ben-Zvi's role in Cryptorion and its special relationship with iBeLink in order to fraudulently induce them to invest in the company. *Id.* ¶¶ 19, 34. They further allege that, around the time the parties entered into the MOU, and just after plaintiffs' investment in the company reached almost $700,000, Ben-Zvi "suddenly stopped being involved in Cryptorion." *Id.* ¶ 33. Later, in December 2017, plaintiffs say they requested that Zurab "let them know how Cryptorion was doing and share with them key financial documents," but he "stonewalled" them, insisting they "were not entitled to such information because they were not yet shareholders of Cryptorion."[4] *Id.* ¶¶ 37-38.

On January 16, 2018, and in accord with provisions of the notes establishing a procedure for it, plaintiffs served a notice of default on Cryptorion. Compl. ¶ 41; *id.* Ex. D. The next day, Cryptorion responded by letter, referencing the parties' inability "to reach an agreement" regarding the company's management and operations, despite "repeated discussions." Compl. ¶ 42; *id.* Ex. E at 3. On February 5, 2018, starting this lawsuit was plaintiffs' response to the company's failure to cure the noticed default. Dismissal was then sought by defendants. *See*

---

[4] Although the complaint alleges this request was made in December 2018, given that the instant action was filed in February 2018, the Court construes the cited year as a typographical error. *See* Compl. ¶ 37; *see also id.* Ex. E at 3 (referencing parties' December 2017 meeting).

3

*supra* note 1.

## Standard of Review

In order to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). On a Rule 12(b)(6) motion, a court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange*, 517 F.3d at 115.

## Discussion

To state a claim for fraudulent inducement under New York law, a plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) an intent to deceive; (3) reasonable reliance on the misrepresentation by the plaintiff; and (4) resulting damages."[5] *Rockaway Beverage, Inc. v. Wells Fargo & Co.*, No. 18-CV-579 (PKC)(SJB), 2019 WL 1433076, at *8 (E.D.N.Y. Mar. 29, 2019) (citation omitted); *see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007) (noting that claim for fraudulent

---

[5] The parties cite New York law throughout their papers "and such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (citation omitted); *see also Tehran-Berkeley Civil & Envtl. Engineers v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) ("[I]mplied consent to use a forum's law is sufficient to establish choice of law."). Accordingly, the Court applies New York substantive law.

4

inducement by omission additionally requires plaintiff to allege that defendant "had a duty to disclose the concealed fact"). Statements that are "mere 'puffery' or are opinions as to future events" do not support a fraud claim. *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citation omitted). Allegations of fraud, moreover, must be pleaded "with particularity" to satisfy Federal Rule of Civil Procedure 9(b), "requiring a plaintiff to 'specify the time, place, speaker, and content of the alleged misrepresentations,' as well as 'how the misrepresentations were fraudulent' and 'those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).

Zurab argues that plaintiffs fail to allege any fraudulent misrepresentations with sufficient specificity to state a claim under New York law and satisfy the heightened pleading standard under Rule 9(b). Zurab Mem. at 15. With factual heft, plaintiffs aver that, on or about August 23, 2017, Ben-Zvi and Zurab informed them that Ben-Zvi, a purported cryptocurrency expert, was a co-founder and co-owner of Cryptorion, with a 50% stake in the company, "and would continue as Cryptorion's CFO." Compl. ¶¶ 9, 18-19, 34. Further detailing their indictment of defendants, plaintiffs go on to allege that Ben-Zvi's involvement in the company ended in mid-September 2017, just after plaintiffs completed their initial investment, and to contend that Ben-Zvi's bail-out from the company revealed defendants' representations to be nothing more than "a ruse calculated to secure the convertible loan." *Id.* ¶¶ 33-35. Similarly, plaintiffs allege that Zurab falsely touted Cryptorion's "special relationship" with iBeLink, which, supposedly, would allow the company to purchase servers "at a significantly better price than that offered to others" and benefit from a competitive advantage. *Id.* ¶¶ 13-14. They later discovered, they assert, that

the company lacked any such special relationship, and that "other [prospective] customers, known to [them], were able to obtain the same computer equipment at the same price." *Id.* ¶ 14. They highlight the portrait of fraud by pleading that Zurab's statements regarding Ben-Zvi's position in the company and its special relationship with iBeLink "induced Plaintiffs to proceed with the convertible loan." *Id.* ¶ 19; *see also id.* ¶ 34 (alleging materiality). According to plaintiffs, once their investment made its way to Cryptorion's coffers, Zurab "misappropriated" the funds "for his own personal use," as shown by "suspicious [corporate] expenditures" including "payments [at] a karaoke bar and hotel in Minsk, Belarus; a payment of $3,000.00 to [Zurab]; and a cash withdrawal of $1,000.00." *Id.* ¶ 36.

As is strikingly apparent from plaintiffs' straightforward recounting of events, these quite plausibly-stated allegations are sufficient to state a claim for fraudulent inducement, especially when viewed in the context of plaintiffs' assertion that Ben-Zvi's involvement in Cryptorion suddenly ended after they transferred roughly $700,000 to the company, which supports an inference of fraudulent intent.[6] *See Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13-CV-4650 (JFK), 2015 WL 769573, at *7 (S.D.N.Y. Feb. 24, 2015) (finding fraudulent

---

[6] Zurab also argues that the complaint violates Rule 8 by failing to give notice of the specific wrongful conduct alleged as to each defendant, instead "simply attribut[ing] the wrongful acts as being committed collectively by multiple defendants." Zurab Mem. at 9. The clear import of the complaint, however, is that, together, both individual defendants made the alleged misrepresentations at issue in order to secure plaintiffs' investment. Thus, the Court finds no deficiency in the statement of the claim on that basis, under either Rule 8 or Rule 9(b). *See Gelles v. TDA Indus., Inc.*, No. 90-CV-5133 (MBM), 1991 WL 39673, at *6 (S.D.N.Y. Mar. 18, 1991) (noting that when multiple defendants "are alleged to have had identical roles in a clearly defined scheme . . . a requirement that plaintiff attribute each recitation of a misstatement to a particular defendant at an exact time and location would violate the liberal pleading requirements of the Federal Rules").

inducement claim adequately pleaded where plaintiffs alleged that company misrepresented status of its inventory and outstanding debt obligations in order to induce them to enter into purchase agreement); *see also Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 448 (E.D.N.Y. 2013) ("Materiality refers to statements that are sufficiently important or relevant to influence the plaintiff's decision."); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996) (noting that "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" raise inference of fraudulent intent); *Burton v. Iyogi, Inc.*, No. 13-CV-6926 (DAB), 2015 WL 4385665, at *9 (S.D.N.Y. Mar. 16, 2015) (courts considering reasonable reliance on motion to dismiss should take into account "the entire context of the transaction").

Plaintiffs' remaining fraud allegations, by contrast, fare poorly. They contend that Zurab misrepresented his "expertise [and/or] purposefully withheld information about the special risks associated with" cryptocurrency. Compl. ¶ 16. Specifically, plaintiffs complain that Zurab,

> who held [himself] out to be [an expert] in the business of mining cryptocurrency, did not disclose . . . that the difficulties of efficiently mining cryptocurrencies would drastically increase, and that, as time goes on and the market for such cryptocurrency grows, each Server can mine less and less of that cryptocurrency.

*Id.* These allegations are fatally flawed. First, plaintiffs do not present any basis to infer that Zurab's representation regarding his expertise was either false or anything other than mere puffery. Furthermore, a claim for fraudulent inducement by omission requires plaintiffs to plead Zurab's "concealment of [material] information that [he] had a duty to disclose." *David R. Maltz & Co., Inc. v. Wachovia Bank, N.A.*, No. 07-CV-1049 (WDW), 2010 WL 1286308, at *9 (E.D.N.Y. Mar. 31, 2010). Since plaintiffs have "alleged no special relationship or fiduciary obligation" requiring Zurab to advise them of general industry risk, such a claim cannot stand here. *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 421 (S.D.N.Y. 2018). Consequently,

plaintiffs do not plausibly plead a claim for fraudulent inducement based on, as they try to do, Zurab's representation as to his expertise or his non-disclosure of the risks of mining cryptocurrency.[7]

---

[7] While plaintiffs seek leave to amend the complaint to the extent the Court finds any allegations of fraud insufficient under Rule 9(b), *see* Pls.' Opp'n at 14 n.2, the Court finds that amendment of this particular claim, based on the record already before the Court, would be futile as a matter of law, and, on that basis, leave to amend is denied.

## Conclusion

In line with the foregoing, Zurab's motion to dismiss the fraudulent inducement claim is granted in part and denied in part. As a result, plaintiffs may proceed on their fraudulent inducement claim based on Zurab's alleged misrepresentations as to Ben-Zvi and iBeLink, but not his representations or omissions regarding expertise and general business risk. The motion relating to the breach of contract claim is denied with leave to renew subject to determination of plaintiffs' motion for default judgment, which shall be held in abeyance pending further order by Magistrate Judge Gold.

Further, the parties are directed to Judge Gold for continued pretrial supervision and the expedited scheduling of a settlement conference.

So Ordered.

Dated: Brooklyn, New York

May 5, 2019

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO

United States District Judge