UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
PAVEL POGODIN and ALEXANDER PROKHOROV,   :
                                         :
                    Plaintiffs,          :
                                         :       REPORT &
        -against-                        :       RECOMMENDATION
                                         :       18-CV-791 (ENV) (SMG)
CRYPTORION INC., ZURAB TSITSUASHVILI a/k/a :
ZURAB ASHVIL, and ZVI BEN-ZVI,           :
                                         :
                    Defendants.          :
                                         :
--------------------------------------------------------------------x

STEVEN M. GOLD, U.S. Magistrate Judge:

## INTRODUCTION

Plaintiffs Pavel Pogodin and Alexander Prokhorov bring this action against defendants

Cryptorion Inc. ("Cryptorion"), Zurab Tsitsuashvili a/k/a Zurab Ashvil ("Tsitsuashvili") and Zvi

Ben-Zvi ("Ben-Zvi"), alleging causes of action for breach of contract as to Cryptorion and

fraudulent inducement as to all defendants.  Compl. ¶¶ 45–50, Dkt. 1.[1]  Plaintiffs filed separate

motions for default judgment against Cryptorion, Not. of Mot. for Default J., Dkt. 47, and

Tsitsuashvili, Not. of Mot. for Default J., Dkt. 110.  The Honorable Eric N. Vitaliano referred

plaintiffs' motions to me for a report and recommendation.  Order dated Jan. 18, 2019; Order

dated Apr. 3, 2020.   For the reasons stated below, I recommend that both motions for default

judgment be granted.

---

[1] Although it is not entirely clear from their Complaint, plaintiffs confirmed in their opposition to Cryptorion's and
Tsitsuashvili's motion to dismiss that Cryptorion is the sole defendant named in the breach of contract claim. Pls.'
Mem. of Law. in Opp. to Mot. to Dismiss at 11, Dkt. 26-24; *see also* Mem. & Order dated May 5, 2019 at 1 n.1,
Dkt. 61.

In August 2017, third-party defendant Givi Topchishvili introduced plaintiffs to Ben-Zvi, who, in turn, introduced them to Tsitsuashvili. Compl. ¶¶ 8–9. Ben-Zvi and Tsitsuashvili represented that "they were the co-founders and co-owners of Cryptorion"—a corporation that would be used to purchase iBeLink servers from a company located in China and establish a datacenter for mining a cryptocurrency known as "Dash." *Id.* ¶¶ 9, 12. Ben-Zvi and Tsitsuashvili further represented that these servers were "the best servers for mining cryptocurrency," *id.* ¶ 12, and that Ben-Zvi and Tsitsuashvili "had a special relationship with iBeLink, which would allow them to obtain the [s]ervers at significantly better price than that offered to others," *id.* ¶ 13. Moreover, they stated that "they were in possession of propriet[ar]y cryptocurrency mining software that made mining more efficient," giving "Cryptorion a competitive edge over other companies in the same business." *Id.* ¶ 15. They invited plaintiffs to invest in Cryptorion through a convertible loan and stated that Tsitsuashvili would serve as Cryptorion's CEO/CTO and Ben-Zvi as its CFO. *Id.* ¶¶ 10, 18.

Plaintiffs allege that they transferred, by installment payments, a total of $1,000,000 to Cryptorion in August and September 2017. *Id.* ¶¶ 20–21, 24, 30. Specifically, on August 24, 2017, plaintiffs transferred $250,000 to Cryptorion, as evidenced by a Promissory Note. Compl. ¶ 20; Decl. of Alexander Prokhorov ("Prokhorov Decl.") ¶ 2, Dkt. 47-1; Decl. of Pavel Pogodin ("Pogodin Decl.") ¶ 2, Dkt. 47-2[2]; *see* Note dated Aug. 24, 2017, Dkt. 1-1. On September 1, 2017, plaintiffs transferred another $386,558 to Cryptorion, which was evidenced by a second Promissory Note. Compl. ¶ 21; Prokhorov Decl. ¶ 3; Pogodin Decl. ¶ 3; *see* Note dated Sept. 1,

---

[2] Because the declarations of Prokhorov and Pogodin attached to the motion for default judgment against Cryptorion in Dkt. 47 are almost identical to the declarations attached to the motion for default judgment against Tsitsuashvili in Dkt. 110, this Report will reference only the first set of declarations.

2017, Dkt. 1-2. The Notes stated that, on or before September 10, 2017, Cryptorion "shall have authorized and issued such number of shares of preferred stock as to entitle [plaintiffs] to receive a thirty percent (30%) interest in the total voting power and economic interest in [Cryptorion]." Note dated Aug. 24, 2017 ¶ 1.02; Note dated Sept. 1, 2017 ¶ 1.02. Each Note also stated that "[t]his [N]ote shall be deemed, without a need for further notice, in default if the issuance of preferred stock pursuant to Section 1.02 of this Note is not completed on or before the end of the business day on September 15, 2017." Note dated Aug. 24, 2017 ¶ 2; Note dated Sept. 1, 2017 ¶ 2.

On September 14, 2017, plaintiffs transferred an additional $50,000 to Cryptorion and entered into a Memorandum of Understanding (the "MOU") with the company. Compl. ¶¶ 24–25; Prokhorov Decl. ¶¶ 6–7; Pogodin Decl. ¶¶ 6–7; *see* MOU, Dkt. 1-3. The MOU provided that

> [t]he parties acknowledge that three installments equal to $250,000.00, $386,558.00 and $50,000.00 have been already advanced by the Investors [previously defined in the MOU as plaintiffs Pogodin and Prokhorov], and a further payment of $313,442.00 shall be deposited contemporaneously with provision by Cryptorion to Investors of the preferred stock and warrants described herein, into a bank account maintained by Cryptorion (collectively, the "First Tranche"). At this time, the First Tranche is supported by one or more secured promissory notes . . . the terms whereof are incorporated by reference herein. The parties further acknowledge that the Note is intended to protect the Investors pending final documentation and consummation of the Investment and shall be cancelled following the consummation of the activities set forth herein.

MOU ¶ 1. As relevant here, the MOU also stated that "[w]ithin [10] business days from the date of this MOU, Cryptorion shall cause its counsel to prepare . . . an amendment of its Certificate of Incorporation and, if necessary, a relevant designation . . . for the purpose of authorizing and issuing cumulative preferred stock." MOU ¶ 2; *see* Note dated Aug. 24, 2017 ¶ 1.01; Note dated Sept. 1, 2017 ¶ 1.01. The MOU further stated that

> [p]romptly, but under no circumstances less than [10] business days
> following the filing of the [a]mendment and contemporaneously
> with the payment of the outstanding balance of the Investment
> (unless reasonably required by counsels to Cryptorion and Investors
> in the course of good faith negotiations) . . . Cryptorion shall issue
> 1,500,000 shares of preferred stock to the Investors in equal
> proportions pursuant to a stock purchase agreement reflecting the
> applicable terms of this MOU.

MOU ¶ 3(b).

The amendment to the Certificate of Incorporation was filed on September 20, 2017, Compl. ¶ 28, and plaintiffs thereafter transferred their final payment of $313,442 to Cryptorion, *id.* ¶ 30; Prokhorov Decl. ¶ 10; Pogodin Decl. ¶ 10. However, despite receiving plaintiffs' installment payments totaling $1,000,000 as contemplated by the Notes and the MOU, Cryptorion did not issue preferred stock to plaintiffs and the parties did not execute a stock purchase agreement. Compl. ¶ 32; Prokhorov Decl. ¶ 11; Pogodin Decl. ¶ 11. Moreover, plaintiffs allege that Ben-Zvi "suddenly stopped being involved in Cryptorion" in mid-September, Compl. ¶ 33, and that, in December 2017, Tsitsuashvili withheld financial information that plaintiffs had requested on the basis that "they were not yet shareholders of Cryptorion." *Id.* ¶¶ 37–38.

On January 16, 2018, and pursuant to the default provision in the Notes cited above, plaintiffs served a Notice of Default and Acceleration and Demand for Payment upon Cryptorion. Compl. ¶ 41; Prokhorov Decl. ¶ 12; Pogodin Decl. ¶ 12; *see* Not. of Default, Dkt. 1-4. The next day, Cryptorion, by letter, denied that it had breached any of its obligations or that the Notes remained outstanding. Compl. ¶ 42; Ltr. dated Jan. 17, 2018, Dkt. 1-5.

On February 5, 2018, plaintiffs commenced this action, alleging, among other things, (1) that Cryptorion defaulted on the Notes and the MOU by failing to issue the preferred stock to plaintiffs and (2) that defendants intentionally misrepresented to plaintiffs "the facts about

Cryptorion's ownership, management, assets[,] and operations, and failed to disclosed the special risks associated with mining cryptocurrency," in order to induce plaintiffs to invest in the company. Compl. ¶¶ 46, 49.

Ben-Zvi answered and cross-claimed against Cryptorion and Tsitsuashvili for contribution and indemnification. Ben-Zvi Answer, Dkt. 15. Cryptorion and Tsitsuashvili, in turn, answered Ben-Zvi's cross claims, Answer to Cross Claims, Dkt. 25, and thereafter moved to dismiss the Complaint for failure to state a claim, Not. of Mot. to Dismiss, Dkt. 26.

On October 11, 2018, Glenn M. Azzinari, Esq., attorney for Cryptorion and Tsitsuashvili, moved to be relieved as counsel for failure to pay legal fees. Mot. to Withdraw, Dkt. 30. During a hearing I held on the motion, Tsitsuashvili informed the Court that he intended to retain new counsel. Tr. of Oct. 18, 2018 Hrg. at 4:12-17, Dkt. 33. I granted Mr. Azzinari's motion to be relieved as counsel as unopposed and scheduled the next conference for November 20, 2018, noting that if new counsel for Tsitsuashvili and Cryptorion did not appear by that date, Tsitsuashvili would "be expected to proceed *pro se*" and plaintiffs could move for entry of default against Cryptorion. Min. Entry dated Oct. 18, 2018, Dkt. 32; *see* Tr. of Oct. 18, 2018 Hrg. at 3:25–4:8, 7:6-9.

New counsel for Tsitsuashvili and Cryptorion did not appear at the next conference. Min. Entry dated Nov. 30, 2018, Dkt. 37. Plaintiffs then filed a letter requesting the Court to "enter an order to the effect that Mr. Tsitsuashvili is proceeding *pro se* until such time as an attorney appears in the action on his behalf." Ltr. dated Dec. 11, 2018 at 2, Dkt. 38. I entered an Order stating that "[u]nless an attorney appears on [their] behalf by December 18, 2018," Tsitsuashvili "will be deemed to be proceeding pro se" and "plaintiffs may see[k] entry of . . . Cryptorion['s] default." Order dated Dec. 11, 2018. I also directed plaintiffs to serve Tsitsuashvili and

Cryptorion with a copy of the Order and file proof of service with the Court. *Id.* Plaintiffs served Tsitsuashvili and Cryptorion by email and U.S. Certified Mail, return receipt requested, on December 11, 2018. Certificate of Service, Dkt. 39.

No attorney appeared for Tsitsuashvili or Cryptorion by the deadline. Upon plaintiffs' application, the Clerk of the Court noted Cryptorion's default. Certificate of Default dated Dec. 27, 2018, Dkt. 43. On January 17, 2019, plaintiffs moved for default judgment against Cryptorion. Not. of Mot. for Default J., Dkt. 47. Judge Vitaliano referred this motion to me for a report and recommendation. Order dated Jan. 18, 2019.

On January 14, 2019, Tsitsuashvili faxed a letter to the Court requesting a stay of discovery pending a determination on the motion to dismiss or, in the alternative, a two-month extension of all discovery deadlines. Ltr. dated Jan. 14, 2019, Dkt. 45. By Order dated Jan. 16, 2019, I denied Tsitsuashvili's application for a stay of discovery but extended his time to respond to plaintiffs' outstanding discovery demands to February 17, 2019. Order dated Jan. 16, 2019.

In February 2019, Tsitsuashvili informed the Court that he would no longer be proceeding *pro se* and that he intended to retain counsel to represent him in this case. Ltr. dated Feb. 17, 2019, Dkt. 51. I entered an Order stating that "[t]he Court will approve reasonable extensions of deadlines sought by any counsel newly entering the case," but that "[t]he parties should not construe this Order as any indication that the Court will vacate the clerk's entry of default" against Cryptorion. Order dated Feb. 19, 2019. Thereafter, Eli Sarfaty, Esq. and Jason Lowe, Esq. filed separate notices of appearance on behalf of Tsitsuashvili. Not. of Appearance, Dkt. 52; Not. of Appearance, Dkt. 54.

On April 24, 2019, I scheduled a hearing on the motion for default judgment against Cryptorion, and ordered that "[c]ounsel for all parties must attend." Scheduling Order dated

Apr. 24, 2019. However, neither Tsitsuashvili nor his counsel appeared at the hearing. Min. Entry dated May 6, 2019. During that conference, I held, among other things,[3] that plaintiffs could amend their motion for entry of a default judgment against Cryptorion. *Id.* On May 10, 2019, plaintiffs submitted supplemental materials in support of their motion for default judgment against Cryptorion. Suppl. Mem. of Law in Supp. of Pls.' Mot. for Default J., Dkt. 60-1.

In May 2019, the Court granted in part and denied in part the motion to dismiss. Mem. & Order dated May 5, 2019, Dkt. 61. Specifically, the Court held that plaintiffs may "proceed on their fraudulent inducement claim based on [Tsitsuashvili's] alleged misrepresentations as to Ben-Zvi and iBeLink, but not his representations or omissions regarding expertise and general business risk." *Id.* at 9. The Court further held that "[t]he motion relating to the breach of contract claim is denied with leave to renew subject to determination of plaintiffs' motion for default judgment, which shall be held in abeyance pending further order by Magistrate Judge Gold." *Id.*

On June 7, 2019, Tsitsuashvili, through counsel, answered the Complaint, counterclaimed against plaintiffs for breach of fiduciary duty, and cross-claimed against defendants for contribution and indemnification. Answer, Dkt. 68. Ben-Zvi answered the cross claim, Answer to Cross Claim, Dkt. 70, and plaintiffs answered the counterclaims, Answer to Counterclaims, Dkt. 73. Tsitsuashvili, through counsel, also filed a third-party complaint against Givi Topchishvili for indemnification and/or contribution. Third-Party Complaint, Dkt. 71.

---

[3] I also made a ruling on the parties' pending discovery dispute. Following the filing of the minute entry on May 6, 2019, Mr. Sarfaty filed a letter apologizing for failing to appear and explaining that his absence was due to a scheduling error. The letter also raised an argument with respect to one aspect of the discovery rulings made at the conference. Ltr. dated May 6, 2019, Dkt. 59. I construed this letter as a motion for reconsideration and granted it, without prejudice to renew, to the extent that Tsitsuashvili would not be required to produce his personal tax returns. Order dated May 7, 2019.

A discovery dispute ensued. Ltr. dated Sept. 20, 2019, Dkt. 80; Ltr. dated Sept. 24, 2019, Dkt. 81. During a telephone conference held to address the dispute, I ordered Tsitsuashvili to provide plaintiffs with the username and password for Cryptorion's Quickbooks account by October 23, 2019, and noted that plaintiffs may file a motion for spoliation sanctions and disclosure of Tsitsuashvili's personal income tax returns by November 6, 2019. Min. Entry dated Oct. 16, 2019, Dkt. 83. Plaintiffs then filed a motion for sanctions and disclosure of Tsitsuashvili's personal income tax returns and other personal financial records for the years 2017 and 2018. Mot. for Sanctions Pursuant to Rule 37 and for Disclosure of Personal Documents, Dkt. 85. Tsitsuashvili requested a pre-motion conference to move to quash a subpoena seeking his personal bank records that was served on JP Morgan Chase Bank, N.A. Mot. for Pre-Mot. Conf., Dkt. 86.

On December 12, 2019, Mr. Sarfaty moved to be relieved as counsel for Tsitsuashvili due to "lack of communication, cooperation, and agreement on litigation strategy." Mot. to Withdraw at 2, Dkt. 98. I entered an Order that the motion to be relieved as counsel be heard at a conference already scheduled for January 7, 2020. Order dated Dec. 12, 2019. Additionally, the Order alerted Tsitsuashvili that, if he failed to appear, the motion would be granted as unopposed, and the Court would recommend that his default be entered unless he appeared through new counsel or indicated an intention to proceed *pro se* by January 14, 2020. *Id.* I further directed Tsitsuashvili's counsel to "promptly serve [him] with a copy of this Order and file proof of service with the Court." *Id.* Tsitsuashvili was served with a copy of the Order via first class mail, email, and WhatsApp. Certificate of Service, Dkt. 100.

Tsitsuashvili failed to appear for the conference on January 7, 2020, and as a result I granted his counsel's motion to be relieved as unopposed. Min. Entry dated Jan. 7, 2020, Dkt.

101; Order dated Jan. 7, 2020.  Tsitsuashvili failed to appear in the case by counsel or indicate his intention to proceed *pro se* by January 14, 2020.  As such, plaintiffs filed a letter with the Court requesting that a default be entered against Tsitsuashvili.  Ltr. dated Jan. 15, 2020, Dkt. 102.  Topchishvili also moved to dismiss the third-party complaint filed by Tsitsuashvili, Ltr. dated Jan. 16, 2020, Dkt. 103, and Ben-Zvi requested a pre-motion conference to move to dismiss the cross claim filed by Tsitsuashvili against him, Ltr. dated Jan. 16, 2020, Dkt. 104.

On January 19, 2020, I filed a Report recommending that Tsitsuashvili be held in default on all claims pending against him, and that all claims asserted by him be dismissed for failure to prosecute.  Report & Recommendation, Dkt. 105.  The Report and Recommendation was mailed to Tsitsuashvili at his last known address and emailed to his last known email address.  On March 9, 2020, Judge Vitaliano entered an Order adopting the Report and Recommendation in its entirety.  Order dated Mar. 9, 2020.  The Clerk of the Court then entered a judgment holding Tsitsuashvili in default on all claims pending against him and dismissing all claims asserted by him for failure to prosecute.  Judgment, Dkt. 109.

On March 30, 2020, plaintiffs moved for default judgment against Tsitsuashvili.  Not. of Mot. for Default J., Dkt. 110.  Judge Vitaliano referred the motion to me for report and recommendation.  Order dated April 3, 2020.  This Report will consider both this motion and the previously filed motion for default judgment against defendant Cryptorion.

## DISCUSSION

### I.  Liability

Once the Clerk enters a defendant's default, the defendant is deemed to have admitted the well-pleaded allegations in the complaint pertaining to liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g. Corp. v.*

*Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

### A. *Breach of Contract against Cryptorion*

To state a claim for breach of contract under New York law,[4] the plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see Skyline Restoration, Inc. v. Great Am. Restoration Servs. Inc.*, 2019 WL 5150207, at *3 (E.D.N.Y. Aug. 5, 2019).

Here, plaintiffs have established the elements of breach of contract. The Complaint alleges that plaintiffs and Cryptorion entered into two Promissory Notes and a MOU to transfer a total of $1,000,000, in installment payments, to Cryptorion, in exchange for preferred stock in the company. Compl. ¶¶ 20–22, 26–29; Prokhorov Decl. ¶¶ 2–4, 7–9; Pogodin Decl. ¶¶ 2–4, 7–9. The Complaint further alleges that plaintiffs performed their contractual obligations by

---

[4] Because this is a diversity action, the choice of law rules of the forum state apply. *See Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994). "Although New York courts generally accord deference to choice-of-law provisions in contracts, such provisions are not controlling and may be disregarded where the most significant contacts with the matter in dispute are in another State." *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) (internal citation omitted). "Moreover, in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied." *Id; see Giannotti v. Am. Legend Aircraft Co.*, 2016 WL 5376253, at *3 n.1 (E.D.N.Y. July 26, 2016) (applying New York law where plaintiffs relied on New York law and defendant defaulted), *report and recommendation adopted*, 2016 WL 5374101 (E.D.N.Y. Sept. 26, 2016). Here, the Notes provide that they "shall be governed by, and construed and interpreted in accordance with, the law of the State of California." Note dated Aug. 24, 2017 ¶ 13; Note dated Sept. 1, 2017 ¶ 13. However, throughout the case, the parties cite to New York law when describing the elements of breach of contract. *See, e.g.*, Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 11, Dkt. 26-1; Pls.' Mem. of Law. in Opp. to Mot. to Dismiss at 7. Accordingly, the Court will apply New York law when considering plaintiffs' motion for entry of default judgment.

making all required payments.  Compl. ¶¶ 20–21, 24, 30; Prokhorov Decl. ¶¶ 2–3, 6, 10; Pogodin

Decl. ¶¶ 2–3, 6, 10.  However, plaintiffs allege, Cryptorion breached the Notes and the MOU by

failing or refusing to issue preferred stock to plaintiffs or execute a stock purchase agreement.

Compl. ¶ 46; Prokhorov Decl. ¶ 11; Pogodin Decl. ¶ 11.  Moreover, after plaintiffs served the

Notice of Default and Acceleration and Demand for Payment, Cryptorion did not pay any

amounts that plaintiffs alleged were due and outstanding.  Prokhorov Decl. ¶¶ 12–13; Pogodin

Decl. ¶¶ 12–13.

These allegations, now deemed admitted by Cryptorion, are plainly sufficient to state a

claim for breach of contract under New York law.  Therefore, I respectfully recommend that

plaintiffs' motion for default judgment on its claim for breach of contract against Cryptorion be

granted.

### B.  Fraudulent Inducement against Cryptorion and Tsitsuashvili

"[A] claim based on fraudulent inducement of a contract is separate and distinct from a

breach of contract claim under New York law." *Merrill Lynch & Co. Inc. v. Allegheny Energy,*

*Inc.*, 500 F.3d 171, 184 (2d Cir. 2007).  To state a claim for fraudulent inducement under New

York law, a plaintiff must allege "(1) a material misrepresentation of a presently existing or past

fact; (2) an intent to deceive; (3) reasonable reliance on the misrepresentation by the plaintiff;

and (4) resulting damages." *Rockaway Beverage, Inc. v. Wells Fargo & Co.*, 378 F. Supp. 3d

150, 166 (E.D.N.Y. Mar. 29, 2019); *see PAPS v. GME Entm't, Inc.*, 2012 WL 5873584, at *7

(S.D.N.Y. Nov. 19, 2012).  Allegations of fraud must be pleaded "with particularity" to satisfy

Federal Rule of Civil Procedure 9(b).  "This means the who, what, when, where, and how: the

first paragraph of any newspaper story." *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,

39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627

(7th Cir. 1990)).  Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a fraud claim must be supported by allegations "that give rise to a strong inference of fraudulent intent."  *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996).

Here, as plaintiffs point out, the Court has previously held that plaintiffs' claim for fraudulent inducement was well-pleaded as it related to Tsitsuashvili's alleged misrepresentations regarding Ben-Zvi's involvement in the company and defendants' special relationship with iBeLink.  Pls.' Mem. of Law in Supp. of Mot. for Default J. against Tsitsuashvili at 7, Dkt. 110-19; *see* Mem. & Order dated May 5, 2019 at 9.  To reiterate, plaintiffs allege that, on or about August 23, 2017, Tsitsuashvili represented that Ben-Zvi was a co-founder and co-owner of Cryptorion, with a 50% stake in the company, and that he would be Cryptorion's CFO.  Compl. ¶¶ 9, 18–19.  Plaintiffs further allege that, despite these representations, Ben-Zvi "suddenly stopped being involved in Cryptorion" in mid-September 2017, soon after plaintiffs had completed their initial investment in the company.  *Id.* ¶ 33.  As such, according to plaintiffs, "the representations that [Ben-Zvi] was and would continue to be [Tsitsuashvili's] equal in the control and management of Cryptorion was a ruse calculated to secure the convertible loan."  *Id.* ¶ 35.  Similarly, plaintiffs allege that Tsitsuashvili and Ben-Zvi represented that they had a "special relationship with iBeLink, which would allow them to obtain the [s]ervers at [a] significantly better price than that offered to others."  *Id.* ¶ 13.  Plaintiffs later discovered, they allege, that Tsitsuashvili and Ben-Zvi "did not have a special relationship with iBeLink" and that "other pr[o]spective customers, known to [p]laintiffs, were able to obtain the same computer equipment at the same price."  *Id.* ¶ 14.

These representations regarding Ben-Zvi's involvement in Cryptorion and the purported special relationship with iBeLink directly implicate Cryptorion's business structure and Tsitsuashvili's business practices and goals at the time of the negotiation—information that would have been material to any person's decision to invest in the company. Moreover, all the above-referenced facts, now deemed admitted by Cryptorion and Tsitsuashvili by virtue of their respective defaults, "constitute strong circumstantial evidence of conscious misbehavior or recklessness" and thus raise an inference of fraudulent intent. *S.Q.K.F.C., Inc.*, 84 F.3d at 634. Therefore, plaintiffs sufficiently allege the first and second elements of fraudulent inducement.

As for the last two elements, plaintiffs sufficiently allege that they reasonably relied upon the misrepresentations regarding Ben-Zvi's involvement in Cryptorion and the purported special relationship with iBeLink "to proceed with the convertible loan," Compl. ¶ 19; *see also id.* ¶ 34, and that plaintiffs have suffered $1,000,000 in damages as a result, *id.* ¶¶ 49–50. Therefore, I respectfully recommend that plaintiffs' motion for default judgment on their claim for fraudulent inducement against Cryptorion and Tsitsuashvili be granted.

## II.    Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *Greyhound Exhibitgroup*, 973 F.2d at 158. The court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]" Fed. R. Civ. P. 55(b)(2)(B). However, a hearing is not required in every case, as a court may conclude that detailed affidavits and documentary evidence are sufficient. *See Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). In this case, the Court need not conduct a hearing to determine damages, because the recoverable damages are evident from the documentary

evidence submitted by plaintiffs, including (1) the Notes; (2) the MOU; (3) plaintiffs'

declarations; (4) the declarations of plaintiff's counsel, *see* Decl. of Daniel Akselrod ("Akselrod

Decl."), Dkt. 47-7, Dkt. 110-1; and (5) the invoices for plaintiffs' legal fees, *see* Invoices, Dkt.

47-11.

### A. Breach of Contract and Fraudulent Inducement

Under New York law, "[a] party injured by breach of contract is entitled to be placed in

the position it would have occupied had the contract been fulfilled according to its terms."

*Merrill Lynch & Co. Inc.*, 500 F.3d at 185. Thus, in this case, the proper measure of damages

with respect to the cause of action for breach of contract is $1,000,000, the amount plaintiffs paid

for consideration they never received. In addition, plaintiffs are entitled to prejudgment interest

at the rate of 9% per year pursuant to N.Y. C.P.L.R. § 5001(a) (providing for prejudgment

interest on sums awarded for breach of contract) and § 5004 (providing for interest at the rate of

9% per year).[5]

Although plaintiffs assert that interest should be calculated from the date of each transfer

made to Cryptorion, Pls.' Mem. of Law in Supp. of Mot. for Default J. against Cryptorion at 3–4,

Dkt. 47-12, the Court finds it more appropriate to calculate the interest from the date of service

of the Notice of Default—January 16, 2018—because, as set forth in paragraph three of the

Notes, "the entire unpaid principal of th[e] Note[s], together with all accrued and unpaid interest

and late fees, [became] immediately due and payable" by Cryptorion upon service of the Notice

---

[5] The Notes provide for interest in the event of a default at the rate of 10% per year. The express language in the Notes, however, provides that interest applies to repayments due from "Holders," who are defined in the Notes as plaintiffs; there does not appear to be an interest rate set forth in the Notes applicable to amounts due from defendant Cryptorion. Note dated Aug. 24, 2017 ¶ 4 ("Unless, within [30] days from the Event of Default (or a later date when Holders learn of Default) Holders notify Borrower of Holders' election to enforce its obligations by specific performance, Holders shall be obligated to repay the principal obligation under this Note plus interest accruing at the rate of ten percent (10%) per annum."); Note dated Sept. 1, 2017 ¶ 4 (same). Although the logic of the interest provision in the Notes is unclear and may be the result of a scrivener's error, I recommend that, because of this ambiguity, interest be awarded pursuant to the CPLR rather than the Notes.

of Default. Note dated Aug. 24, 2017 ¶ 3; Note dated Sept. 1, 2017 ¶ 3; *see* Compl. ¶ 41.

Therefore, the proper measure of damages with respect to the breach of contract claim is the

$1,000,000 that plaintiffs invested in Cryptorion, plus 9% annual interest from January 16, 2018,

to the date the judgment is paid. Since only Cryptorion, and not Tsitsuashvili, is a signatory to

the Notes and the MOU, only Cryptorion is liable for damages under this cause of action.

As for the fraudulent inducement claim, "the true measure of damage [for fraud] is

indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is

known as the 'out-of-pocket' rule." *PAPS*, 2012 WL 5873584, at *7 (internal quotation marks

and citation omitted). Here, as a direct result of the misrepresentations regarding Ben-Zvi's

involvement in Cryptorion and defendants' special relationship with iBeLink, plaintiffs were

induced into making a convertible loan of $1,000,000 to Cryptorion. Plaintiffs, therefore,

suffered an actual pecuniary loss of $1,000,000 and are entitled to damages against Cryptorion

and Tsitsuashvili in the amount of $1,000,000 under their fraudulent inducement claim. In

addition, as they are with respect to their breach of contract claim, plaintiffs are entitled to

prejudgment interest under the CPLR on their claim for fraudulent inducement. *See id.* at *8

(holding that CPLR § 5001(a) applies to claims for fraudulent inducement).

In short, plaintiffs' claims for breach of contract and fraudulent inducement both seek the

return of the $1,000,000 investment plaintiffs made in Cryptorion. "Where a plaintiff seeks

recovery for the same damages under different legal theories, only a single recovery is allowed."

*Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir. 1994); *see Perrone v. Amato*, 2017 WL

2881136, at *39 (E.D.N.Y. July 5, 2017); *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 449

(S.D.N.Y. 2010). Because plaintiffs cannot recover multiple damages for the same injury, the

Court recommends that Cryptorion and Tsitsuashvili be held jointly and severally liable for $1,000,000 in damages, together with prejudgment interest at the rate of 9% per year.

### B. Attorneys' Fees and Costs

Plaintiffs also seek attorneys' fees in the amount of $57,620 through December 2018 and costs in the amount of $1,536.45 on their breach of contract claim against Cryptorion. Compl. ¶ 47; Akselrod Decl. dated Jan. 16, 2019, ¶¶ 39–41. "[T]he general rule in New York" is that "attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003); *see also Quanzhou Joerga Fashion Co., Ltd. v. Brooks Fitch Apparel Grp., LLC*, 2011 WL 4063344, at *8 (S.D.N.Y. Aug. 11, 2011) ("There is no question that, absent a contractual provision for fees, a prevailing plaintiff cannot recover those expenses on a contract-breach claim."). Here, the Notes expressly provide that plaintiffs may recover attorneys' fees and costs. Note dated Aug. 24, 2017 ¶¶ 8, 15; Note dated Sept. 1, 2017 ¶¶ 8, 15. Accordingly, an award of attorneys' fees is authorized by the Notes.

"The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. Mar. 19, 2015); *see generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Well-established Second Circuit doctrine requires that a fee application be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148. "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010). District courts have broad discretion in

determining the reasonableness of an attorney's requested fees. *See Chocolatl v. Rendezvous Cafe, Inc.*, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).

Courts awarding attorneys' fees calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).[6] In addition, courts consider case-specific variables such as

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

i.        Reasonable Hourly Rates

A reasonable hourly rate reflects "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. This rate should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, 2019 WL 3937126, at *14

---

[6] The "presumptively reasonable fee" has historically been known as the "lodestar." *Arbor Hill*, 522 F.3d at 183.

(E.D.N.Y. July 3, 2019) (citing *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)). "The 'community' is generally considered the district where the district court sits." *Id.* (citing *Lochren v. Cty. of Suffolk*, 344 F. App'x 706, 708 (2d Cir. 2009)).

"Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." *Hormel Foods Sales, LLC v. Ship Side Food Serv., Inc.*, 2018 WL 3202076, at *2 (E.D.N.Y. Mar. 23, 2018) (internal quotation marks and citation omitted); *see Capital One, N.A. v. Auto Gallery Motors, LLC*, 2020 WL 423422, at *3 (E.D.N.Y. Jan. 27, 2020); *see LG Capital Funding, LLC v. 5Barz Int'l, Inc.*, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019). "Complex cases of long duration litigated by well-experienced counsel warrant a court to consider a comparatively high hourly rate, while less complex matters, even if litigated by experienced counsel, support a lower rate." *Capital One, N.A.*, 2020 WL 423422, at *3 (internal quotation marks and citation omitted).

Here, plaintiffs' counsel Val Mandel, P.C. submitted a declaration by Daniel Akselrod, Esq. and contemporaneous time records indicating that legal services were rendered by (1) Mr. Akselrod at the rate of $400 per hour; (2) Eric Wertheim, Esq., at the rate of $490; and (3) Val Mandel, Esq., at the rate of $620 per hour. Akselrod Decl. dated Jan. 16, 2019 ¶ 31. As set forth in his declaration, Mr. Akselrod is an associate at the firm, has been admitted to practice law in New York since 2005, and is also admitted to practice in the Second Circuit and the Eastern and Southern Districts of New York. *Id.* ¶ 34. He avers that, since 2006, he has "worked under Mr. Mandel's and Mr. Wertheim's supervision, handling numerous and complex cases before the State and Federal courts of New York," including various cases involving fraud. *Id.* ¶¶ 34–35. Although he has about 15 years of experience at the firm, the hourly rate sought is higher than

those ordinarily awarded to senior associates in this district. Therefore, I respectfully recommend reducing Mr. Akselrod's hourly rate to $325.

Next, as set forth in Mr. Akselrod's declaration, Mr. Mandel, the name partner of the firm, has been licensed to practice law in New Jersey since 1986, the District of Columbia since 1989, and New York since 1995. *Id.* ¶ 32. Similarly, Mr. Wertheim[7] has been licensed to practice law in New York since 1988 and New Jersey since 1996. *Id.* ¶ 33. Both Mr. Mandel and Mr. Wertheim are "member[s] in good standing of the Second Circuit Court of Appeals, as well as the Eastern and Southern Districts of New York" and "ha[ve] handled a broad range of matters, including complex commercial disputes," before state and federal courts. *Id.* ¶¶ 32, 33, 35. Still, it bears noting that each attorney's requested rates exceed even the highest rates awarded in this district. Nevertheless, in light of their over 30 years of experience, I respectfully recommend awarding an hourly rate of $450 to Mr. Mandel and $450 to Mr. Wertheim—the higher end of the range of fees awarded to partners in this district. *See Capital One, N.A.*, 2020 WL 423422, at *4 (awarding an hourly rate of $450 to partner with more than 24 years of experience); *Hormel Foods Sales, LLC*, 2018 WL 3202076, at *2 (awarding an hourly rate of $450 to partner with 20 years of "significant experience and expertise in commercial litigation matters").

## ii. Reasonable Numbers of Hours

The next step in awarding attorneys' fees is determining the reasonableness of the number of hours expended by counsel. In reviewing a fee application, the court should exclude "excessive, redundant, or otherwise unnecessary" hours. *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The court should examine

---

[7] The declaration does not state whether Mr. Wertheim is a partner, but, given his extensive experience and the fact that he has a supervisory role in the firm, the Court calculates his reasonable hourly rate as a partner's rate.

each entry "with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). Furthermore, block-billing and vague descriptions make it difficult to determine the reasonableness of the time spent on particular tasks and warrant a reduction in attorneys' fees. *See Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142–43 (E.D.N.Y. 2013). A percentage reduction is "a practical means of trimming fat from a fee application" and is a permissible way of reducing a fee award. *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citations omitted).

Here, the contemporaneous billing records show that, through December of 2018, Mr. Akselrod billed 61 hours, Mr. Mandel billed 12.2 hours, and Mr. Wertheim billed 52.4 hours, for a total of 125.6 hours.[8] *See* Invoices; Akselrod Decl. dated Jan. 16, 2019 ¶¶ 36–38. The procedural history of this case, which involves Tsitsuashvili being represented by multiple attorneys prior to the entry of default against him and the filing of numerous motions and letters with respect to discovery, warrants a greater fee award than is typically rendered in connection with a default judgment motion. Nevertheless, certain time entries do not bear close scrutiny. As an initial matter, there are multiple entries totaling .7 hours of legal work that are clearly attributable solely to defendant Ben-Zvi. For example, Mr. Wertheim specified in one entry on March 29, 2018 that he "review[ed] Ben-Zvi['s] answer and claims." Invoices at ECF Pg. 12

---

[8] Although plaintiffs did not move for entry of default judgment against defendant Tsitsuashvili until March 30, 2020, Dkt. 110, they do not seek, and are not entitled, to recover attorney's fees from any defendant other than Cryptorion.

(entry totaling .3 hours).  Mr. Akselrod, in another entry on March 29, 2018, broadly stated that he "[r]eviewed answers of defendants," and it is clear that he was referring to Ben-Zvi, and not the other defendants, because Ben-Zvi's counsel had filed his answer on ECF on the same day. *Id.* (entry totaling .3 hours).   Finally, Mr. Mandel, in an entry on April 4, 2018, stated that he "[r]eviewed [a] letter from Ben-Zvi's attorney."  *Id.* at ECF Pg. 15 (entry totaling .1 hours). Because Ben-Zvi is not in default, plaintiffs' counsel should have redacted these entries, and I therefore respectfully recommend denying the request for .7 hours of legal work that were clearly attributable solely to Ben-Zvi.  *See Santiago v. Coco Nail HB, Inc.*, 2012 WL 1117961, at *4 (E.D.N.Y. Mar. 16, 2012), *report and recommendation adopted*, 2012 WL 1118853 (E.D.N.Y. Apr. 3, 2012) (denying plaintiff's request for 8 hours of work clearly attributable solely to a non-defaulting defendant).

As for the remainder of the entries, I respectfully recommend reducing the claimed billable hours by an across-the-board percentage of 20% in light of the repetitive block-billing and the duplicative nature of many of the entries.  For example, on April 19, 2018, Mr. Wertheim billed 2.5 hours and described the work done in a single entry as "meeting with clients; review emails re:cross-claims; travel."  Invoices at ECF Pg. 18.  The description of how Mr. Akselrod spent 1.3 hours on March 12, 2018, similarly lists a wide range of activities.  *Id.* at ECF Pg. 12.

For the reasons above, I calculate the reasonable fee as follows:

| Provider Type | Presumptive Maximum Rate | Requested Rates | Approved Rates | Requested Hours | Approved Hours | Lodestar |
|---|---|---|---|---|---|---|
| Senior Associate | $200–$325 | $400 | $325 | 61 | 48.56 | $15,782 |
| Name Partner | $300–$450 | $620 | $450 | 12.2 | 9.68 | $4,356 |
| Partner | $300–$450 | $490 | $450 | 52.4 | 41.68 | $18,756 |
| **TOTAL SUM** | | | | 125.6 | 99.92 | $38,894 |

### iii.    Costs

A party awarded attorney's fees is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks and citation omitted).  Plaintiffs seek to recover $1,536.45 in costs.   Plaintiffs are entitled to attorneys' fees and costs on their breach of contract claim against Cryptorion pursuant to their contract. Plaintiffs are also entitled to recover their costs with respect to Tsitsuashvili pursuant to Federal Rule of Civil Procedure 55(b)(1).  However, plaintiffs' documented costs include $350 reflected in the process server invoice dated February 21, 2018, Invoices at ECF Pg. 34, and $60, as reflected in the process server invoice dated September 26, 2018, *id.* at ECF Pg. 38, both for service costs relating to Ben-Zvi, who did not default.  I find the remainder of the costs to be reasonable and thus respectfully recommend that plaintiff be awarded $1,126.45 in costs.

### CONCLUSION

For the reasons stated above, I respectfully recommend that the Court grant plaintiffs' motions for default judgment and that damages be awarded to plaintiffs as follows:

a.    Cryptorion and Tsitsuashvili be held jointly and severally liable for $1,000,000;

b.    Cryptorion and Tsitsuashvili be held jointly and severally liable for interest on the amount due at the rate of 9% per year, from the service of the Notice of Default on defendants on January 16, 2018, until the date of the final and complete payment of the outstanding amount and all required interest;

c.    Cryptorion be held liable for $38,894 in attorneys' fees; and

d.    Cryptorion and Tsitsuashvili be held jointly and severally liable for $1,126.45 in costs.

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before October 1, 2020. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit). Plaintiffs shall forthwith serve copies of this Report and Recommendation upon the defaulting defendants at their last known addresses and file proof of service with the Court.

_____
/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
September 17, 2020

U:\#JAV 2019-2020\Pogodin et al v. Cryptorion Inc. et al., 18-cv-791\Final R&R.docx